## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## PECOS DIVISION

| | | | |
|---|---|---|---|
| UNITED STATES OF AMERICA | § | | |
| | § | | |
| v. | § | NO. | PE:20-CR-00447-DC-DF-1 |
| | § | NO. | PE:21-CV-00073-DC |
| PABLO ANGEL ZUBIA | § | | |

### REPORT AND RECOMMENDATION OF THE U.S. MAGISTRATE JUDGE

TO THE HONORABLE DAVID COUNTS, U.S. DISTRICT JUDGE:

BEFORE THE COURT is Defendant Pablo Angel Zubia's ("Defendant") Motion to Vacate Under 28 U.S.C. § 2255 (hereafter, "Motion to Vacate"). (Doc. 32). This case is before the undersigned U.S. Magistrate Judge through a standing order of referral from the U.S. District Judge pursuant to 28 U.S.C. § 636 and Appendix C of the Local Rules for the Assignment of Duties to U.S. Magistrate Judges. After due consideration, the undersigned **RECOMMENDS** that Defendant's Motion to Vacate be **DENIED**. (Doc. 32).

### I.  BACKGROUND

On October 8, 2020, Defendant was charged in a five-count indictment with transporting a total of nine illegal aliens for the purpose of commercial advantage and private financial gain, in violation of 8 U.S.C. § 1324(a)(1)(A)(ii) and (B)(i). On November 18, 2020, Defendant pleaded guilty to all five counts.

Prior to sentencing, a Presentence Investigation Report ("PSR") was prepared. (Doc. 25). Pursuant to the 2018 United States Sentencing Guidelines Manual (hereafter, "Sentencing Guidelines") as amended and in effect when Defendant was sentenced, he as a first-time offender had a base offense level of **twelve** under U.S.S.G. § 2L1.1. Because the offenses involved the smuggling of more than six but less than twenty-four illegal aliens, Defendant's offense level was increased by three levels to **fifteen** pursuant to U.S.S.G. § 2L1.1(b)(2)(A). Furthermore, because the offenses

involved the reckless or intentional creation of a substantial risk of death or serious bodily injury to another person due to Defendant's unbridled transport of three of the aliens located in the bed of the truck Defendant was driving, Defendant's offense level was increased to **seventeen**, which pursuant to U.S.S.G. § 2L1.1(b)(6) was automatically increased to **eighteen**. Defendant had accepted responsibility for his role in the offenses, as well as assisted authorities in the investigation or prosecution of his misconduct, both of which resulted in an offense level decrease of three levels to **fifteen** under U.S.S.G. § 3E1.1(a)–(B). Defendant otherwise was computed to have a criminal history score of **two** points for two prior convictions with a sentence of less than sixty days each, which established a criminal history category of **II**. This criminal history category combined with the total offense level of fifteen produced a guideline range of **twenty-one to twenty-seven months**.

At the sentencing hearing, Bart Medley ("Mr. Medley"), Defendant's counsel, objected to the application of the recklessness enhancement in the PSR. (Doc. 39 at 4). Specifically, Mr. Medley attempted to distinguish precedent from the United States Court of Appeals for the Fifth Circuit indicating that "having folks in the back of a pickup going down the highway is endangerment" by noting that Defendant was "doodling" through a golf resort in Lajitas as opposed to a highway. *Id.* The Court overruled objection at the hearing, and on March 23, 2021, sentenced Defendant to twenty-seven months' imprisonment to be followed by three years of supervised release. *Id.* Defendant made no direct appeal to his sentencing, and filed the instant Motion to Vacate on September 1, 2021. (Doc. 32). On November 2, 2021, the Government filed a response. (Doc. 35). On January 5, 2022, Defendant filed a Reply. (Doc. 38). Accordingly, this matter is ripe for disposition.

## II. LEGAL STANDARD

1. *28 U.S.C. § 2255*

Section 2255 permits an inmate serving a post-conviction sentence "to move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). Relief under

§ 2255 is limited to those "transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." *United States v. Gaudet*, 81 F.3d 585, 589 (5th Cir. 1996). A motion may be made under § 2255 on only four grounds: (1) "the sentence was imposed in violation of the Constitution or laws of the United States"; (2) "the court was without jurisdiction to impose such sentence"; (3) "the sentence was in excess of the maximum authorized by law"; or (4) the sentence is "otherwise subject to collateral attack." *United States v. Faubion*, 19 F.3d 226, 232 (5th Cir. 1994) (citing 28 U.S.C. § 2255(a)). This motion must be made within one year from the occurrence of one of these events. *United States v. Meadows*, 394 F. Supp. 3d 674, 677 (W.D. Tex. 2019) (citing 28 U.S.C. § 2255(f)). Thus, "[i]n the absence of constitutional or jurisdictional defects, a federal prisoner may invoke § 2255 only if the error constitutes 'a fundamental defect which inherently results in a complete miscarriage of justice.'" *Pillault v. United States*, 371 F. Supp. 3d 325, 330 (N.D. Miss. 2019) (quoting *United States v. Addonizio*, 442 U.S. 178, 185 (1979)).

2. *Ineffective Assistance of Counsel*

To prevail on an ineffective assistance of counsel claim, the petitioner under the familiar *Strickland* test "must demonstrate that: (1) counsel's performance was deficient; and (2) the deficient performance prejudiced the defense." *United States v. Guzman*, No. 19-10783, 2021 U.S. App. LEXIS 30059, at *6, 2021 WL 4610124, at *2 (5th Cir. Oct. 6, 2021) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). Thus, a defendant must show that "counsel's representation fell below an objective standard of reasonableness" and that this constitutionally ineffective representation prejudiced him. *United States v. Scott*, 11 F.4th 364, 368 (5th Cir. 2021) (citing *Garza v. Idaho*, 139 S. Ct. 738, 744 (2019)); *Lee v. United States*, 137 S. Ct. 1958, 1964 (2017) (citing *Strickland*, 466 U.S. at 688).

As to deficiency, counsel needed to have "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Jones v. United*

*States*, 14 F. Supp. 3d 811, 815 (W.D. Tex. 2014) (quoting *Strickland*, 466 U.S. at 687). The defendant must show that, "in light of the circumstances as they appeared at the time of the conduct, 'counsel's representation fell below an objective standard of reasonableness' as measured by 'prevailing professional norms'" in order to satisfy the deficiency prong. *King v. Davis*, 883 F.3d 577, 586 (5th Cir. 2018) (quoting *Rhoades v. Davis*, 852 F.3d 422, 431 (5th Cir. 2017)). There is a "strong presumption that counsel's representation was within the 'wide range' of reasonable professional assistance.'" *Id.* (quoting *Harrington v. Richter*, 562 U.S. 86, 104 (2011)). Regarding performance, counsel's errors must have been "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *United States v. Wines*, 691 F.3d 599, 606 (5th Cir. 2012) (citing *Strickland*, 466 U.S. at 687). This prong is satisfied by a showing that there is a "reasonable probability . . . sufficient to undermine confidence in the outcome" that, "but for counsel's unprofessional errors, the result of the proceeding would have been different." *United States v. Lagos*, 25 F.4th 329, 335-36 (5th Cir. 2022) (internal citation omitted). A "reasonable probability" is one "sufficient to undermine confidence in the outcome" of a criminal trial, and requires a "substantial" as opposed to a "conceivable" likelihood of another result. *Wines*, 691 F.3d at 604.

### III. DISCUSSION

1. *Necessity of an Evidentiary Hearing*

The trial court must first conduct a preliminary review of the § 2255 motion, and "[i]f it plainly appears from the motion, any attached exhibits, and the record of the prior proceeding that the moving party is not entitled to relief, the judge must dismiss the motion." *Norman v. United States*, 376 F. Supp. 3d 700, 704 (N.D. Miss. 2019) (citing Rule 8, RULES GOVERNING SECTION 2255 PROCEEDINGS) (alteration in original). After the court reviews the Government's response and any transcripts of prior proceedings, the court must decide whether an evidentiary hearing is warranted. Rule 8, RULES GOVERNING SECTION 2255 PROCEEDINGS. An evidentiary hearing may be warranted if the petitioner "produce[s] independent indicia of the likely merit of his allegations." *United States v.*

*Bogomol*, No. 18-11486, -- F. App'x -- , 2021 U.S. App. LEXIS 24148, at *7, 2021 WL 3620444, at *3 (5th Cir. Aug. 13, 2021) (original alterations omitted) (citing *United States v. Edwards*, 442 F.3d 258, 264 (5th Cir. 2006)). Thus, a § 2255 motion necessitates an evidentiary hearing "unless either (1) the movant's claims are clearly frivolous or based upon unsupported generalizations, or (2) the movant would not be entitled to relief as a matter of law, even if his factual assertions were true." *United States v. Harrison*, 910 F.3d 824, 826–27 (5th Cir. 2018) (citing *United States v. Guerra*, 588 F.2d 519, 521 (5th Cir. 1979)).

As will be explained below, the undersigned finds that Defendant's Motion to Vacate can be decided entirely on the evidence in the record. In particular, Defendant's claims upon examination of the record are left entirely without merit, and Defendant himself crestfallen. An evidentiary hearing is therefore not necessary. *See also United States v. Tate*, No. H-15-631-1, No. H-18-4234, 2021 U.S. Dist. LEXIS 126120, at *22, 2021 WL 2834675, at *8 (S.D. Tex. July 7, 2021); *see also Elliott v. United States*, No. 4:16cv621, 2019 U.S. Dist. LEXIS 139951, at *22–*23, 2019 WL 3890161, at *7–*8 (E.D. Tex. June 26, 2019), *report and recommendation adopted*, No. 4:16-CV-621, 4:14-CR-11(01), 2019 U.S. Dist. LEXIS 139378, 2019 WL 3858662 (E.D. Tex. Aug. 16, 2019). Accordingly, the undersigned **RECOMMENDS** that the Court deny any opportunity for an evidentiary hearing on Defendant's Motion to Vacate. (Doc. 32).

2. *Defendant's Proposed Objections*

Defendant argues that Mr. Medley's assistance was ineffective on two related grounds: (1) Mr. Medley failed to object to the PSR wherein Defendant's guideline sentence was increased by five levels, resulting in the "near doubling" of his sentence; and (2) after his sentence was imposed, Mr. Medley failed to raise and litigate an objection that the sentence was unreasonable. (Doc. 32 at 17, 19). Defendant's two prongs are commingled, however; his first issue is tripartite, and includes itself a claim that Mr. Medley "failed to argue to the Court that the sentence was unreasonable."

(Doc. 32 at 18). Thus, in the interests of concision, the primary PSR complaint will be addressed separately from the three secondary purported instances of ineffective assistance.

### a. Presentencing Report

Defendant's first line of attack relates to the PSR. Defendant believes Mr. Medley should have objected to it on the grounds that the sentence as proposed was outside of the guideline range. As discussed above, Defendant's sentence was calculated in the PSR to be twenty-seven months, which is at the upper terminus of the guideline range for a defendant with a designated criminal history category of II and an offense level of 15. (Doc. 30). That twenty-seven months is within the range for such category and offense level is undisputed. Therefore, the only issue to determine on this ground is whether the PSR guideline range was reached through proper metrics in calculating Defendant's criminal history category and offense level.

It is undisputed that Defendant committed the federal violation in question, the transportation of illegal aliens for financial gain as prohibited by 8 U.S.C. § 1324. (*See* Doc. 30). The Sentencing Guidelines allocate a base offense level of twelve for the crime of "smuggling, transporting, or harboring an unlawful alien" where the defendant has no prior such conviction. U.S.S.G. § 2L1.1(a); *United States v. Luyten*, 966 F.3d 329, 331 n.1 (5th Cir. 2020). This offense level is augmented by at least three levels depending upon the amount of unlawful aliens involved, here being, as Defendant admitted, eight. (Docs. 25, 30). An objection on the grounds that the offense level should have not included this enhancement, clearly, would have been meritless. Counsel's assistance is not rendered ineffective by writ of him not raising meritless objections. *See Tate*, 2021 U.S. Dist. LEXIS 126120, at *22, 2021 WL 2834675, at *8. Since, as the PSR documents indicate, Defendant admitted to transporting eight aliens, which would provide for the instant calculation, Mr. Medley could not have objected on the grounds that he transported fewer than six aliens. Mr. Medley was not required to

raise this objection, and subsequently his failure to do so was not unreasonable.[1] The Sentencing Guideline impose a three-level enhancement for the transportation of eight aliens. U.S.S.G. § 2L1.1(b)(2)(A); *United States v. De Jesus-Ojeda*, 515 F.3d 434, 440 n.3 (5th Cir. 2008). Therefore, after this elevation, Defendant's offense level would be at fifteen. Accordingly, the undersigned holds that Defendant's complaints as to this enhancement are meritless.

Defendant furthermore evidently expected Mr. Medley to object to the enhancement as to reckless conduct. Defendant claims that Mr. Medley should have made an objection on this ground, but failed to do so. (Doc. 32 at 5–7). If the transportation offense "involved . . . recklessly creating a substantial risk of death or serious bodily injury to another person," the level is to be increased by two, and if the resulting offense level is under eighteen, the level is automatically reset to eighteen. U.S.S.G. § 2L1.1(b)(6); *Luyten*, 966 F.3d at 331. Defendant admitted to, and the PSR considered, transporting three aliens in the back of his pickup truck. (Docs. 21; 25 at 4). The transportation of individuals, unbuckled and without other appropriate safety gear, has been deemed to constitute reckless endangerment as defined under the Sentencing Guidelines. *United States v. Maldonado-Ochoa*, 844 F.3d 534, 537 (5th Cir. 2016). Curiously, Defendant does not address the Government's emphasis on this point in his Reply. (Doc. 38). The undersigned will now address this tangential point at this juncture.

The United States Court of Appeals for the Fifth Circuit was expressly tasked with addressing whether "transporting unrestrained aliens in the bed of a pickup truck may create a risk of injury or even death, thus qualifying for a § 2L1.1(b)(6) enhancement." *Maldonado-Ochoa*, 844 F.3d at 537. The Court there confirmed a standing principle that a § 2L1.1(b)(6) enhancement "is appropriate where the defendant transported unrestrained aliens in the bed of a pickup truck," even if

---

1. Frivolous objections can be much like a knife, able to sever an attorney's reputation and credibility if an unreasonably baseless claim is made; unfortunately for Defendant, his criminal actions forced Mr. Medley to hold this objection by its hilt and re-sheath.

the defendant drove them only a "*de minimis* distance at a *de minimis* speed." *Id.* Importantly, however, the Court did not cabin this application to highways or otherwise public roadways.

The rosiest of colored glasses would reveal that even if this were not the case, the suggestion that Mr. Medley did not raise the objection as to *Maldonado-Ochoa*'s application to this case is specious. Mr. Medley raised the objection that, although "the Fifth Circuit has held that having folks in the back of a pickup going down the highway is endangerment, there is a distinction" based upon Defendant's act of "doodling through the Lajitas golf resort." (Docs. 35-2 at 2–3; 39 at 4:6–15). In fact, Mr. Medley both raised written objections as well as objections at the sentencing hearing attempting to challenge the enhancement. (Docs. 35-1; 39 at 4:6–15). Thus, Mr. Medley did indeed produce the objection as to the reckless endangerment enhancement on behalf of Defendant. Merely because the Court overruled the objection, Defendant cannot now complain again to the Court for a secondary review. (Doc. 39 at 4:16–24). Defendant has indicated no argument as to why this objection was nevertheless insufficient, and seems to have forgotten the contents of his hearing given the stakes present at the proceedings. Therefore, with the presumption of reasonableness left unrebutted, Defendant's assistance as to this enhancement is without merit.

With this established, the undersigned concludes that Defendant's offense level was properly increased by two pursuant to § 2L1.1(b)(6) for the reckless endangerment of the pickup bed aliens. Thus, Defendant's offense level was increased from fifteen to seventeen, and then again automatically to eighteen. For having accepted responsibility and his provision of assistance to authorities in aiding the investigation or prosecution of his misconduct, Defendant's offense level was decreased by three levels as permitted by the Sentencing Guidelines. U.S.S.G. § 3E1.1; *United States v. Longoria*, 958 F.3d 372, 376 (5th Cir. 2020). With Defendant's offense level finalized at fifteen, the Sentencing Guidelines provided for two points for Defendant's criminal history, one each for two prior sentences of imprisonment of, if at all, less than sixty days. U.S.S.G. § 4A1.1; *United States v. Marroquin*, 884 F.3d 298, 300 (5th Cir. 2018). The two points for Defendant's criminal

history results in a criminal history category of II under the Sentencing Guidelines. *United States v. Gordon*, 838 F.3d 597, 600 (5th Cir. 2016). Ultimately, Defendant's offense level of fifteen and criminal history category of II produced a sentencing guideline range of twenty-one-to-twenty-seven months' imprisonment. *Id.* The PSR considered all of this, and the sentence of twenty-seven months was within the range of the Sentencing Guidelines. *Id.* at 600–01.

Defendant has not met his burden of rebutting the presumption that Mr. Medley's conduct concerning the Sentencing Guidelines calculations was reasonable. Accordingly, the undersigned **RECOMMENDS** that Defendant's Motion to Vacate be **DENIED** on this ground. (Doc. 32).

        b.  *Secondary Issues: Unreasonable Sentence, Sentence Appeal, Reduction of Sentence*

Defendant's second attempt to breach the Due Process shield comes in the form of the claim that Mr. Medley's failure "to argue to the Court that the sentence was unreasonable" diminished his assistance to an extent so as to be ineffective. (Doc. 32 at 18). Defendant relies on *United States v. Booker* to buttress his argument that Mr. Medley possessed an obligation to object to his twenty-seven-month sentence as unreasonable. Unfortunately, however, Defendant's qualm is accompanied by little discernible explanation as to how *Booker* is relevant to the sentence imposed.

In any event, the undersigned finds that Defendant's reliance upon *Booker* is misplaced. In *Booker*, the Supreme Court of the United States held that former 18 U.S.C. § 3553(b)(1), which imposed a *requirement* that federal sentencing judges apply a sentence from within the suggested guideline range, violated the Sixth Amendment of the United States Constitution. *See United States v. Booker*, 543 U.S. 220 (2005). Effectively, this abrogation excised § 3553(b)(1) from the statute, and converted the Sentencing Guidelines "from a mandatory regime to a discretionary regime." *United States v. Mares*, 402 F.3d 511, 518 (5th Cir. 2005) (reflecting on *Booker*'s impact on the Sentencing Guidelines). Under the current framework, such great deference is due to the sentencing judge that "it will be rare for a reviewing court to stay that such a sentence is 'unreasonable.'"

*Morales v. United States*, No. 7:12-CV-295, 7:08-CR-1242-1, 2015 U.S. Dist. LEXIS 196816, at *26, 2015 WL 13540992, at *10 (S.D. Tex. July 28, 2015) (quoting *Mares*, 402 F.3d at 519).

As thoroughly explicated above, Defendant has not met his burden of rebutting the presumption of reasonableness as to Mr. Medley's conduct concerning the calculation of his offense level and criminal history category, or as to an error with the calculation itself. In deciding on an appropriate sentence, the PSR generally "bears sufficient indicia of reliability to be considered as evidence by the sentencing judge in making factual determinations required by the sentencing guidelines." *Hernandez v. United States*, No. EP-09-CV-00164-KC, EP-07-CR-02399-KC-DCG, 2010 U.S. Dist. LEXIS 144037, at *16, 2010 WL 8033181, at *5 (W.D. Tex. Dec. 7, 2010) (citing *United States v. Fitzgerald*, 89 F.3d 218, 223 (5th Cir. 1996)). A court's reliance upon the Sentencing Guidelines can result in a procedurally unreasonable sentence "if there is a failure to properly calculate the sentencing range . . . or if the court treats the guidelines as mandatory or fails to consider the factors set forth in § 3553(a)." *Stone v. United States*, No. 1:19cv119, 2021 U.S. Dist. LEXIS 254297, at *16 (E.D. Tex. Apr. 20, 2021) (citing *Gall v. United States*, 552 U.S. 38, 51 (2007)), *report and recommendation adopted*, No. 1;19-CV-119, 2022 U.S. Dist. LEXIS 34084, 2022 WL 597247 (E.D. Tex. Feb. 25, 2022). So long as the sentence was within the guideline range—which as noted an innumerable amount of times, it was, albeit at its highest end—the sentence would be presumed reasonable. Defendant thus needs to demonstrate "that the sentence does not account for a factor that should receive significant weight, . . . gives significant weight to an irrelevant or improper factor, or . . . represents a clear error of judgment in balancing sentencing factors." *United States v. Cooks*, 589 F.3d 173, 186 (5th Cir. 2009).

Having done no such analysis, explanation, or focusing of his quarrels, Defendant is left with a mere paper dagger against the presumption colossus of *Booker* and the Sentencing Guidelines. Defendant's paltry defense gains no ground since the Court cannot evaluate the unreasonableness of Mr. Medley's conduct or other aspects of Defendant's representation without an established basis to

do so. *Accord Stone*, 2021 U.S. Dist. LEXIS 254297, at *18. Defendant's twenty-seven-month sentence is within the guideline range, and without any rebuttal, is therefore reasonable. *See Davis v. United States*, No. 3:16-cv-3239-N, 3:13-cr-0390-N, 2018 U.S. Dist. LEXIS 220185, at *13, 2018 WL 7133704, at *4–*5 (N.D. Tex. Dec. 21, 2018), *report and recommendation adopted*, No. 3:16-cv-3239-N, 3:13-cr-0390-N, 2019 U.S. Dist. LEXIS 12153, 2019 WL 329566 (N.D. Tex. Jan. 25, 2019); *see also Morales v. United States*, No. 7:12-CV-295, 7:08-CR-1242-1, 2015 U.S. Dist. LEXIS 196816, at *26, 2015 WL 13540992, at *10 (S.D. Tex. July 28, 2015) (recommending denial of an ineffective assistance claim due to a "conclusory allegation" that counsel should have objected to an "unreasonable" sentence). Defendant has not demonstrated that Mr. Medley's conduct was deficient. Accordingly, the undersigned **RECOMMENDS** that Defendant's Motion to Vacate be **DENIED** on this ground as well. (Doc. 32).

Defendant also claims that, to provide effective assistance of counsel, Mr. Medley should have sought a reduction of Defendant's sentence based upon the factors of 18 U.S.C. § 3553(a). (Doc. 32 at 18). Predictably, this claim is closely related to the aforementioned unreasonable sentence argument Defendant presents, and therefore, the undersigned will address it but in brief. In the aftermath of *Booker*, federal courts were admonished that 18 U.S.C. § 3553(a) and the reasonableness factors were still intact. *See Mares*, 402 F.3d at 518; *see also United States v. Booker*, 543 U.S. 220, 266 (2005). However, neither Defendant's Motion to Vacate nor even his untimely Reply indicate which theory of sentence reduction Mr. Medley should have requested. *See Castillo-Garza v. United States*, No. 1:16-cv-005, B-14-928-1, 2016 U.S. Dist. LEXIS 64731, at *8–*10, 2016 WL 2893929, at *3–*4 (S.D. Tex. Jan. 21, 2016) (discussing a "fast-track" reduction as provided by the Sentencing Guidelines); *United States v. Alvarez*, 834 F. App'x 974, 975 (5th Cir. 2021) (same).

Were Defendant to somehow have pleaded his ineffective assistance of counsel claim as to the Sentencing Guidelines calculation correctly, Defendant's dissatisfaction as to Mr. Medley's

failure to seek a vague "reduction" would benefit Defendant no further. *See, e.g.*, *Candanoza-Garcia v. United States*, No. M-09-200, M-08-609-1, 2012 U.S. Dist. LEXIS 207358, at *16, 2012 WL 13109822, at *7 (S.D. Tex. Aug. 8, 2012) (refusing to offer relief to defendant who did "not suggest[] what else counsel could have done to lower her sentence" and the record for which did not indicate "there was any other legitimate ground on which counsel could have requested a further reduction"). To the extent that Defendant is requesting relief based upon Mr. Medley's failure to reduce Defendant's so-called "upward departure"—which in itself is a misnomer given how his sentence was *within* the guideline range—the undersigned detects no other reason for reduction on the record. (Doc. 32 at 7). On the question of Mr. Medley's purported constitutional obligation to plead for a reduction in sentence, Defendant has not demonstrated that Mr. Medley's conduct was deficient. Accordingly, the undersigned **RECOMMENDS** that Defendant's Motion to Vacate be **DENIED** on this ground as well. (Doc. 32).

Defendant's last bulwark against the purportedly unconstitutional representation was that Mr. Medley should have filed an appeal of Defendant's sentence based on its unreasonableness. (Doc. 32 at 6). For counsel to have been constitutionally ineffective based upon the failure to file an appeal, the Supreme Court has designated counsel's specific obligation. In particular, "counsel has a constitutionally-imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal . . . , or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Roe v. Flores-Ortega*, 528 U.S. 470, 480 (2000). Whether the defendant partook in a guilty plea is of special relevance, since "a guilty plea reduces the scope of potentially appealable issues and . . . such a plea may indicate that the defendant seeks an end to judicial proceedings." *Id.* There is no *per se* rule for counsel to file an appeal, and where the defendant has not provided counsel with instructions on whether an appeal should be taken, the question of deficient performance becomes a separate two-part inquiry, the first being "whether counsel in fact consulted with the defendant about an appeal."

*United States v. Calderon*, 665 F. App'x 356, 364 (5th Cir. 2016) (quoting *Roe*, 528 U.S. at 478). If counsel so has, counsel's performance is only deficient if he "fail[s] to follow the defendant's express instructions" on the matter, and if not, the question becomes one of whether counsel consulted with the defendant as part of his routine as counselor. *Sanchez v. United States*, No. 5:19-CV-134-C-BQ, 5:18-CR-020-02-C, 2020 U.S. Dist. LEXIS 158046, at *29, 2020 WL 5145149, at *10 (N.D. Tex. Apr. 2, 2020) (quoting *United States v. Pham*, 722 F.3d 320, 324 (5th Cir. 2013)).

In this case, the undersigned concludes that Mr. Medley satisfied his constitutional duty to provide effective assistance to Defendant. Defendant at no point states the basic allegation that Mr. Medley did not consult with him, and offers no evidence to the contrary. Mr. Medley, on the other hand, has provided a sworn affidavit which advances his recollection that he met with Defendant after the sentencing hearing outside of the courtroom. (Doc. 35-2 at 3). Mr. Medley asserts he "advised Defendant that he did, indeed, have the right to appeal his sentence," and also that while "Counsel did not see any legitimate grounds for appeal, . . . Defendant was free to appeal if he wished." *Id.* at 3–4. Although Defendant was in possession of Mr. Medley's email address and cell phone number, Mr. Medley promises that Defendant never communicated to him any desire to appeal. *Id.* at 4.

The right to seek an appeal of a sentence lies exclusively with Defendant. *See United States v. El-Mezain*, 664 F.3d 467, 577 (5th Cir. 2011) (citing *Roe*, 528 U.S. at 479). Judging by the evidence before the Court, the undersigned finds that Defendant was informed of his right to appeal the twenty-seven-month sentence as well as the advantages and disadvantages—i.e., the possibility that Defendant may succeed, and the greater possibility that he would not—of pursuing an appeal of his sentence. The undersigned also concludes that Mr. Medley provided Defendant with several pre-established lines of communication in the event that Defendant did later desire to seek an appeal of the sentence. Follow either of these paths, Defendant did not. Thus, with no evidence, or pleadings for that matter, indicating that Mr. Medley failed to consult Defendant about the ability to appeal,

Defendant's arguments become strained at best. Mr. Medley's sworn affidavit, on the other hand, illustrates that Defendant indeed did speak with his counsel about the right to appeal, and Defendant has not contended that he instructed Mr. Medley to file one.[2] Therefore, Defendant's claim on this ground falls short of demonstrating Mr. Medley's conduct was deficient.

Accordingly, the undersigned **RECOMMENDS** that Defendant's Motion to Vacate be **DENIED** on the grounds that Mr. Medley was: (1) constitutionally mandated to request a reduction of Defendant's sentence; (2) constitutionally required to present an objection to Defendant's sentence for unreasonableness; or (3) possessed an obligation to file an appeal as to Defendant's sentence. (Doc. 32).[3]

3. *Certificate of Appealability*

Defendant has not yet moved for a certificate of appealability from this Court, but the Court can nevertheless consider whether this case's merits warrant granting one at this stage. *See Perez v. Cockrell*, 77 F. App'x 201, 203 (5th Cir. 2003) (internal citations omitted). An appeal to the Fifth Circuit may not be taken from a final order in a habeas corpus proceeding unless the Fifth Circuit itself issues a certificate of appealability. 28 U.S.C. § 2253(c)(1)(A). Rule 11 of the Federal Rules Governing Section 2255 cases mandates that, upon entering a final order adverse to the applicant, the district court "issue or deny a certificate of appealability." *Morrison v. United States*, No. MO: 10-

---

2. An evidentiary hearing as to whether counsel did speak with his client about his appellate options may be necessary where the client's pleadings or evidence dispute counsel's own evidence. *United States v. Church*, No. 09-00246-02, 11-00008, 2011 U.S. Dist. LEXIS 121138, at *9–*10, 2011 WL 4973810, at *5 (W.D. La. Oct. 18, 2011). However, as the Government properly notes, Defendant has failed to propound even an allegation that Mr. Medley did not consult with him. (Doc. 35 at 10–11). Therefore, the undersigned finds that no evidentiary hearing is warranted.
3. The undersigned bases his substantive recommendation upon Defendant's failure to demonstrate in any capacity that counsel's performance was defective. The undersigned acknowledges that, if Defendant's allegations somehow satisfied the first prong of *Strickland*, Defendant's characterization of his own PSR calculation would indeed result in a lower guideline range per the Sentencing Guidelines, thereby causing prejudice to him. *See Holstein v. United States*, No. 2:12-CV-0214, 2015 U.S. Dist. LEXIS 43933, at *56, 2015 WL 1514986, at *20 (N.D. Tex. Mar. 17, 2015). However, because Defendant has inadequately pleaded the first prong of an ineffective assistance of counsel claim, and because the second prong would be an all but foregone conclusion in such a scenario, the undersigned need not thoroughly evaluate the additional factor of prejudice.

CR-00135(1)-RAJ-DC, 2015 U.S. Dist. LEXIS 188244, at *70–*71, 2015 WL 12645590, at *24 (W.D. Tex. Apr. 2, 2015) (citing Rule 11, RULES GOVERNING SECTION 2255 PROCEEDINGS). In order to obtain a certificate of appealability, the petitioner must make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This determination requires an "overview of the claims in the habeas petition and a general assessment of their merits." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *United States v. Fields*, 761 F.3d 443, 452 (5th Cir. 2014) (internal citation omitted).

For the reasons explained above, the undersigned believes that reasonable jurists would not find debatable or wrong the conclusion that Defendant's claims are without merit. *See Villegas v. United States*, No. M-16-213, -- F. Supp. 3d -- , 2019 U.S. Dist. LEXIS 73429, at *13, 2019 WL 1930026, at *5–*6 (S.D. Tex. Apr. 3, 2019), *report and recommendation adopted*, No. M-16-213, M-06-1089-3, 2019 U.S. Dist. LEXIS 72403, 2019 WL 1930290 (S.D. Tex. Apr. 30, 2019). Accordingly, the undersigned **RECOMMENDS** that a certificate of appealability for Defendant be **DENIED**.

## IV.  RECOMMENDATION

For the reasons stated above, the undersigned **RECOMMENDS** that Defendant's Motion to Vacate be **DENIED**. (Doc. 32).

Additionally, the undersigned **RECOMMENDS** that the Court deny any opportunity for an evidentiary hearing on Defendant's Motion to Vacate. (Doc. 32).

Further, the undersigned **RECOMMENDS** that a certificate of appealability for Defendant be **DENIED**.

SIGNED this 31st day of March, 2022.

_____
DAVID B. FANNIN
UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND RIGHT TO APPEAL/OBJECT

In the event that a party has not been served by the Clerk with this Report and Recommendation electronically, pursuant to the CM/ECF procedures of this District, the Clerk is **ORDERED** to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested. Pursuant to 28 U.S.C. § 636(b), any party who desires to object to this report must serve and file written objections within fourteen (14) days after being served with a copy unless the time period is modified by the District Judge. A party filing objections must specifically identify those findings, conclusions, or recommendations to which objections are being made; the District Judge need not consider frivolous, conclusive, or general objections. Such party shall file the objections with the Clerk of the Court and serve the objections on the U.S. Magistrate Judge and on all other parties. A party's failure to file such objections to the proposed findings, conclusions, and recommendations contained in this report shall bar the party from a *de novo* determination by the District Judge. Additionally, a party's failure to file written objections to the proposed findings, conclusions, and recommendations contained in this report within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Judge. *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996).